**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **KERRY SHEA PRICE,**<br><br>    **Plaintiff,**<br><br>    **v.**<br><br>**UNITE HERE LOCAL 25,**<br><br>    **Defendant.** | **Civil Action No. 10-1865 (JDB)** |
| **KERRY SHEA PRICE,**<br><br>    **Plaintiff,**<br><br>    **v.**<br><br>**DC CAP HOTELIER LLC, CONNIE MILSTEIN, AND FRANK ARNOLD,**<br><br>    **Defendants.** | **Civil Action No. 11-784 (JDB) (consolidated with Civil Action No. 10-1865 (JDB))** |

**MEMORANDUM OPINION**

**I.    Background**

Plaintiff Kerry Shea Price, proceeding pro se, brings this action against his former employer DC CAP Hotelier d/b/a the Jefferson Hotel ("the Jefferson"), as well as the Jefferson's owner and general manager, alleging that they breached a collective bargaining agreement ("CBA") governing his employment at the Jefferson in violation of § 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185. He further alleges that defendant UNITE HERE Local 25 ("the Union") breached its duty of fair representation by failing to

1

pursue a grievance on his behalf. These claims combine to form what the Supreme Court has labeled a "hybrid § 301/fair representation" claim. <u>DelCostello v. Int'l Bhd. of Teamsters</u>, 462 U.S. 151, 165 (1983). All defendants have moved for summary judgment pursuant to Federal Rule of Civil Procedure 56. For the reasons that follow, defendants' motions will be granted.

A.      Factual Background

The Jefferson Hotel, located in Washington, D.C., employed plaintiff as a cook from July 20, 2009 to November 6, 2009. Pl.'s Am. Compl. [ECF 23] ("Pl.'s Compl.") ¶¶ 2, 23. Many of the Jefferson's employees are represented by the Union, a labor organization representing hospitality workers in and around the District of Columbia. Union's Mem. in Supp. Mot. Summ J. [ECF 30] ("Union's Mem.") at 2. Over the years, the Union and the Jefferson have negotiated a series of collective bargaining agreements that govern the terms of employment for Jefferson employees. Union's Mem. at 2.

In January 2007, representatives of the Jefferson and the Union met to discuss the hotel's planned renovation, which would require the complete closure of the facility. Jefferson Defs.' Mem. in Supp. Mot. Summ. J [ECF 28] ("Jefferson's Mem.") at 2. On January 29, 2007, the parties signed a series of agreements regarding employment issues relevant to the renovation and eventual reopening of the hotel. <u>See</u> Union's Mem. at 2-3 & Att. 1 ¶ 5 (Declaration of Stephanie Jones) ("Jones Decl."); Jefferson's Mem. at 2-3 & Att. 1 ¶ 3 (Certification of Gabrielle Desintonio) ("Desintonio Cert."). The parties negotiated a shutdown agreement where the Jefferson agreed to adopt the collective bargaining terms that would be settled in the upcoming rounds of negotiations with modifications that would apply upon the hotel's reopening. <u>See</u> Union's Mem. at 2; Jones Decl. ¶ 5 & Ex. A ¶ 14 (Shutdown Agreement). Those modifications

were set forth in a Letter of Agreement, executed on the same day as the Shutdown Agreement. Jones Decl. ¶ 5 & Ex. B (Letter of Agreement) ("Agreement").

In the Letter of Agreement, the Union and the Jefferson agreed to a probationary period for returning employees as well as an extended probationary period for employees hired during and after the renovation. Agreement ¶¶ 3-4. Employees hired after the start of the renovations would be on probationary status during a pre-opening period of up to ninety days, and they would also be subject to an additional ninety-day probationary period following the hotel's reopening. Id. During the probationary period, Union-represented employees would not have access to the grievance and arbitration procedure unless they were "returning employees." Id. An explanation of the probationary period was included in the Employee Benefits Guide that was issued to the Jefferson's Union-represented employees in the fall of 2009. Jefferson's Mem. at 3; Desintonio Cert., Ex. B at 1. Plaintiff acknowledged his receipt of the Employee Benefits Guide on October 12, 2009. Hotel's Mem. at 3 & Ex. C.

When the Jefferson hired plaintiff on July 20, 2009, Pl.'s Compl. ¶ 2, the hotel had already been closed for renovations. It officially reopened on August 31, 2009. Jefferson's Mem. at 3. On November 6, 2009, sixty-seven days after the official reopening, the Jefferson fired plaintiff as the result of an alleged altercation with another employee. Pl.'s Compl. ¶ 23; Jefferson's Mem. at 3. The Union filed a grievance on plaintiff's behalf, Pl.'s Compl. ¶ 27, but took no further action after the Jefferson informed the Union that plaintiff did not have access to the grievance procedure because he was still within the ninety-day probationary period following the hotel's reopening date, Jefferson's Mem. at 3.

B.     Procedural History

3

Plaintiff originally filed two separate lawsuits, one against the Union and one against the Jefferson, bringing several statutory and constitutional claims against each defendant.[1] The Court eventually dismissed all claims except for (1) the claim that the Jefferson had breached the CBA in terminating plaintiff, in violation of § 301 of the LMRA, 29 U.S.C. § 185, and (2) the claim that the Union breached its duty of fair representation by failing to adequately represent him in his grievance against his termination. As explained, plaintiff's two claims combine to form what the Supreme Court has labeled a "hybrid § 301/fair representation" claim. DelCostello, 462 U.S. at 165. Hence, the two actions were consolidated. Order Granting Mot. to Consolidate Cases [ECF 22].

## II.     Standard of Review

Summary judgment is appropriate when the pleadings and the evidence demonstrate that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment bears the initial responsibility of demonstrating the absence of a genuine dispute of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The moving party may successfully support its motion by identifying those portions of "the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of motion only), admissions, interrogatory answers, or other materials," which it believes demonstrate the absence of a genuine issue of material fact. Fed. R. Civ. P. 56(c)(1); see Celotex, 477 U.S. at 323.

---

[1] Both actions were filed in the Superior Court of the District of Columbia. Defendants removed the cases to this Court pursuant to 28 U.S.C. §§ 1441 and 1331. See Notice of Removal, No. 11-784 (April 22, 2011) [ECF 1]; Notice of Removal, No. 11-1865 (Nov. 2, 2010) [ECF 1].

In determining whether there exists a genuine issue of material fact sufficient to preclude summary judgment, the court must regard the non-movant's statements as true and accept all evidence and make all inferences in the non-movant's favor. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). A non-moving party, however, must establish more than the "mere existence of a scintilla of evidence" in support of its position. Id. at 252. By pointing to the absence of evidence proffered by the non-moving party, a moving party may succeed on summary judgment. Celotex, 477 U.S. at 322. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249-50 (citations omitted). Summary judgment is appropriate if the non-movant fails to offer "evidence on which the jury could reasonably find for the [non-movant]." Id. at 252.

Defendant Jefferson contends that in accordance with Local Civil Rule 7(h), the Court must accept as true those facts presented by defendants in their statements of material facts that plaintiff did not specifically refute. Reply Mem. in Further Supp. of Jefferson's Mem. [ECF 35] ("Jefferson's Reply") at 2-4. However, district courts have discretion to excuse noncompliance with Rule 7(h). See Bush v. District of Columbia, 595 F.3d 384, 387 (D.C. Cir. 2010); Arrington v. United States, 473 F.3d 329, 335 (D.C. Cir. 2006). Furthermore, courts must construe pro se filings liberally, Richardson v. United States, 193 F.3d 545, 548 (D.C. Cir. 1999), and "may ignore some technical shortcomings," Voinche v. FBI, 412 F. Supp. 2d 60, 70 (D.D.C. 2006). See also Haines v. Kerner, 404 U.S. 519, 520-21 (1972) (per curiam) (holding pro se complaints to "less stringent standards than formal pleadings drafted by lawyers"). As a result, this Court will excuse plaintiff's omission of a statement of genuine issues.

### III.       Discussion

A "hybrid" claim under § 301 of the LMRA comprises two causes of action: one against the union for breach of the duty of fair representation and one against the employer for breach of contract. DelCostello, 462 U.S. at 164. In order to prevail against either defendant, a plaintiff must prove both parts of the hybrid claim, as the two parts are "inextricably interdependent." United Parcel Serv., Inc. v. Mitchell, 451 U.S. 56, 62, 66 (1981). Procedurally, the Court must first determine whether a bargaining representative has breached its duty of fair representation before assessing the breach of contract claim. Id. at 62; Brown v. Gino Morena Enters., 44 F. Supp. 2d 41, 44 (D.D.C. 1999).

A.     Duty of Fair Representation

The Supreme Court has held that labor unions have "a statutory duty fairly to represent" covered employees under the National Labor Relations Act. Vaca v. Sipes, 386 U.S. 171, 177 (1967). In order to establish that a bargaining representative has breached its duty of fair representation, a plaintiff must demonstrate that the union represented the employee in a "discriminatory, dishonest, arbitrary, or perfunctory fashion . . . ." DelCostello, 462 U.S. at 164. See also Payne v. Giant Food, Inc., 346 F. Supp. 2d 15, 20 (D.D.C. 2004) ("[T]he Union breaches its duty only when its behavior is so far outside a wide range of reasonableness that it is wholly irrational or arbitrary . . . .") (internal quotation marks and citations omitted).

Plaintiff cannot make that showing here. The Letter of Agreement between the Jefferson and the Union expressly established an extended probationary period for all employees who were hired after the hotel's renovation began. Under that agreement, "[o]nce the Hotel officially opens, all employees . . . will be subject to a ninety (90) day probationary period. . . . No employee shall have access to the grievance and arbitration procedure during this period except

6

for 'returning employees.'" Agreement ¶ 4.[2] Plaintiff does not claim that he was a "returning employee." For other employees, the agreement unambiguously denies access to the grievance and arbitration procedure for anyone dismissed during the ninety-day probationary period following the hotel's reopening. Hence, if the Letter of Agreement is valid and plaintiff was a probationary employee at the time of his termination, the Union would have had no obligation to initiate a grievance or arbitration procedure on his behalf. Therefore, there would be no violation of the duty of fair representation, because a union does not breach its duty by failing to act when it is not obligated to do so. See Diaz v. Int'l Longshore and Warehouse Union, Local 13, 474 F.3d 1202, 1206 (9th Cir. 2007); Cruz v. Local Union No. 3 of the Int'l Bhd. of Elec. Workers, 34 F.3d 1148, 1153-54 (2d Cir. 1994) (union defendants do not breach their duty of fair representation by failing to "process a meritless grievance").

Plaintiff challenges the validity of the Letter of Agreement on the ground that its terms conflict with the master CBA.[3] Pl.'s Opp'n to Jefferson's Mem. & Union's Mem. [ECF 34] ("Pl.'s Opp'n") at 6. However, the Letter of Agreement expressly provides that "[t]o the extent this side letter conflicts with the CBA, the side letter governs." Agreement at 1. Side letters mutually agreed to by the parties in a collective bargaining relationship may supplement the original collective bargaining agreement. See N.Y. & Presbyterian Hosp. v. NLRB, 649 F.3d

---

[2] Similarly, the Employee Benefit Guide states that: "Once the Hotel officially opens, all Employees who have met the Hotel's standards during the Pre-Opening Period . . . will be subject to a ninety (90) day probationary period. During this official hotel Opening Period, Employees may be terminated for failing to meet the Hotel's established rules and standards, as determined by the hotel, with no access to the grievance and arbitration procedure." Hotel's Mem., Ex. B at 1.

[3] Plaintiff also argues that the Letter of Agreement is invalid for a number of other reasons, including its "uncustomary and unconventional" probationary period. Pl.'s Opp'n at 6-7. However, probationary provisions are a common practice in collective bargaining agreements, and even a six-month probationary period is not so far outside a wide range of reasonable alternatives that it is irrational or arbitrary. See Brown, 44 F. Supp. 2d at 44-45.

723, 726 (D.C. Cir. 2011) ("the collective bargaining agreement . . . includes a 'side letter'"); see also Moreau v. James River-Otis, Inc., 652 F. Supp. 1030, 1031 (D. Me. 1987) ("The proposed side agreement constituted an exception to the general provision in the collective bargaining agreement . . . ."); Evansville-Vanderburgh Sch. Corp. v. Evansville Teachers Ass'n, 494 N.E.2d 321, 325-26 (Ind. Ct. App. 1986) (side letter that declared "this letter will serve to supplement the collective bargaining agreement" was part of the collective bargaining agreement). Hence, even if the probationary period established in the Letter of Agreement conflicts with provisions of the master CBA, the terms agreed to in the side letter control this case. Plaintiff has not offered any reason the Court should conclude otherwise.

   The claim for a breach of the duty of fair representation, then, turns on whether plaintiff was in fact a probationary employee at the time of his dismissal. The Court denied the Jefferson's previous motion to dismiss because on that record there was no way to verify whether plaintiff was, as defendants claimed, on probationary status. Price v. DC CAP Hotelier, LLC, 11 Civ. 784 (D.D.C. Jan. 3, 2012) [ECF 10] at 7. However, in an attempt to avoid spending the parties' time and resources on prolonged discovery if defendants had a viable threshold defense, the Court allowed defendants to resubmit their motions and provide evidence on that point. The Court noted that limited discovery could potentially be taken if necessary, but it appears that no such discovery was requested or conducted.

   Defendants have now submitted the documentation necessary to show that plaintiff was in fact a probationary employee. The Letter of Agreement and plaintiff's acknowledgment form establish that all employees were subject to a ninety-day probationary period following the hotel's official reopening and that only "returning employees" had access to the grievance procedure during that time. The documents also show that plaintiff was dismissed on November

6, 2009 – sixty-seven days after the hotel's official opening. He was, then, within the 90-day probationary period established by the Letter of Agreement at the time of his dismissal.

Plaintiff's only counterargument is that he was paying union dues at the time of his dismissal. In support of this argument, he has submitted an earnings statement from the Jefferson that shows that union dues were deducted from his paycheck in September 2009. Plaintiff contends that "Defendant Local 25 does not collect union dues, from non-union members" and therefore "as a result of accepting [p]laintiff's monthly payments, said [d]efendant had an obligation and responsibility to represent [p]laintiff . . . ." Pl.'s Opp'n at 7. However, while it may be unusual to collect union dues from probationary employees, it is not unheard of. See NLRB v. Okla. Fixture Co., 332 F.3d 1284, 1293-94 (10th Cir. 2003) (en banc) (discussing deduction of dues equivalent from probationary employees' wages); see also Holmes v. Cnty. of Cook, No. 03-4772, 2006 WL 208706, at *2 (N.D. Ill. Jan. 24, 2006) (employee who paid union dues was still a probationary employee who "[had] no seniority and [could] be terminated at any time during the probationary period"). Moreover, even if the payment of dues were evidence that plaintiff was a union member, he still would not have necessarily been entitled to access the grievance procedure. The Letter of Agreement states that "[n]o employee shall have access to the grievance and arbitration procedure during [the 90-day probation] period except for 'returning employees.'" Agreement ¶ 4 (emphasis added). As noted above, plaintiff has not argued that he was a returning employee.

Plaintiff's final argument is that a union's disparate treatment of probationary employees is itself a breach of the duty of fair representation. The Court disagrees. The Supreme Court has held that a union must be accorded a wide range of reasonable choices and has broad authority in the negotiation of the collective bargaining agreement. Ford Motor Co. v. Huffman, 345 U.S.

9

330, 338 (1953). Thus, several courts of appeals have found that a union's negotiation of a collective bargaining provision that treats probationary employees differently from regular employees does not constitute a breach of the duty of fair representation. Traffas v. Cessna Aircraft Co., 62 Fed. App'x 891, 898 (10th Cir. 2003); Skillsky v. Lucky Stores, Inc., 893 F.2d 1088, 1096 (9th Cir. 1990); Van Leeuwen v. U.S. Postal Serv., 628 F.2d 1093, 1096-97 (8th Cir. 1980). In light of the broad discretion given to unions in negotiating collective bargaining agreements, the probationary period in the CBA at issue here is not so far outside a wide range of reasonable alternatives as to be wholly irrational or arbitrary. See Brown, 44 F. Supp. 2d at 44-45. Therefore, the Union did not breach its duty of fair representation by agreeing to forego access to the grievance procedure for probationary employees.

Because the CBA as modified by the Letter of Agreement absolves the Union of any duty to file a grievance on behalf of a probationary employee, and because plaintiff was a probationary employee, the Union cannot be said to have violated its duty of fair representation by not challenging the plaintiff's discharge. Van Leeuwen, 628 F.2d at 1096-97.

B.      Breach of Contract

Even if plaintiff could prove that the Union had breached its duty of fair representation, he still could not sustain a claim for breach of the CBA against the Jefferson. Where a plaintiff has no contractual protections against dismissal, his discharge cannot be considered a breach of the CBA. Id. Here, the Letter of Agreement created a probationary status and expressly revoked any contractual protections against dismissal for probationary employees. The D.C. Circuit has determined that probationary employees covered by similar provisions cannot raise contractual challenges to their dismissal. Am. Postal Workers Union, AFL-CIO v. U.S. Postal Serv., 940 F.2d 704, 707 (D.C. Cir. 1991) (employees could not raise contract-based claims in federal court

where collective bargaining agreement left probationary employees with no contractual means of challenging their dismissals); Sanders v. Wash. Metro. Area Transit Auth., 819 F.2d 1151, 1158 (D.C. Cir. 1987) (probationary employee terminable at will and without access to grievance proceedings had no contractual claim for termination). As established above, plaintiff was a probationary employee at the time of his discharge and therefore was not entitled to use the grievance and arbitration procedure. Hence, he cannot pursue a claim for breach of contract against the Jefferson.

C.      Plaintiff's Motion for Leave to File an Amended Complaint

Plaintiff has also filed a motion requesting leave to file an amended complaint. Pl.'s Mot. to File Am. Compl. [ECF 24]. While leave to amend a complaint should be freely granted when justice so requires, see Fed. R. Civ. P. 15(a)(2), the Court may deny a motion to amend if such amendment would be futile, Foman v. Davis, 371 U.S. 178, 182 (1962); James Madison Ltd. v. Ludwig, 82 F.3d 1085, 1099 (D.C. Cir. 1996). "An amended complaint is futile if it merely restates the same facts as the original complaint in different terms . . . or could not withstand a motion to dismiss." Robinson v. Detroit News, Inc., 211 F. Supp. 2d 101, 114 (D.D.C. 2002) (citation omitted).

Here, plaintiff proposes to amend his complaint by adding allegations of unfair labor practices and discharge without just cause. Both claims are fatally defective. Except in limited circumstances, the National Labor Relations Board has exclusive primary jurisdiction over claims involving unfair labor practices. See United Electric, Radio and Mach. Workers of Am. v. Gen. Electric Co., 231 F.2d 259, 308 (D.C. Cir. 1956). Plaintiff has not pled facts that would support an exception to that rule here, nor has he pled any facts plausibly supporting an entitlement to relief on this claim. And even if he had, the 180-day statute of limitations for

unfair labor practices claims would have run by the time plaintiff filed his complaints in this case.  29 U.S.C. § 160 (b).  The "discharge without just cause" claim, then styled as a wrongful discharge claim, has already been dismissed to the extent it differed from plaintiff's § 301/fair representation claim.  Price v. DC CAP Hotelier, LLC, 11 Civ. 784 (D.D.C. Jan. 3, 2012) [ECF 10] at 3-4.

In addition, the Jefferson defendants correctly note that this is the second time plaintiff has sought to amend his complaint to avoid a dispositive motion, even though all relevant facts were known to him from the beginning of this litigation. Defs.' Mem. Opp'n Pl.'s Mot. Am. Compl. [ECF 26] at 5.  Although leave to amend should be freely given when justice so requires, plaintiff cannot keep this case alive indefinitely by shifting his legal theories at the last minute. For that reason as well, the Court will deny the motion for leave to amend.  See Equity Group, Ltd. v. Painewebber, Inc., 839 F. Supp. 930, 932 (D.D.C. 1993) ("The Court finds that the amended complaint is merely a tactic designed to evade summary judgment, and that to allow amendment at this time would protract the litigation and thus prejudice defendant."); see also Stoddard v. District of Columbia, 764 F. Supp. 2d 213, 220-21 (D.D.C. 2011).

### IV.  Conclusion

Summary judgment is appropriate if the non-movant fails to offer "evidence on which the jury could reasonably find for the [non-movant]." Anderson, 477 U.S. at 252. Plaintiff has failed to come forward with specific facts showing that he was not a probationary employee subject to the terms of the Letter of Agreement at the time of his dismissal. He therefore cannot show either

that the Union breached its duty of fair representation or that the Jefferson breached any contractual right of his.[4] A separate order accompanies this Memorandum Opinion.

/s/

JOHN D. BATES
United States District Judge

Dated: August 10, 2012

---

[4] Given the resolution of defendants' summary judgment motions, the Court will dismiss as moot plaintiff's motion to commence discovery.